---

MAYRA L. SAEZ-ORTIZ,

                         1:17-cv-06286-NLH

         Plaintiff,

                         **OPINION**

v.

COMMISSIONER OF SOCIAL
SECURITY,

         Defendant.

---

**APPEARANCES:**

ADRIENNE FREYA JARVIS
800 NORTH KINGS HIGHWAY
SUITE 304
CHERRY HILL, NJ 08034

     *On behalf of Plaintiff*

NAOMI B. MENDELSOHN
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET, 6TH FLOOR
PHILADELPHIA, PA 19123

     *On behalf of Defendant*

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), regarding Plaintiff's application for Disability

Insurance Benefits ("DIB")[1] under Title II of the Social Security

---

[1] DIB is a program under the Social Security Act to provide
disability benefits when a claimant with a sufficient number of
quarters of insured employment has suffered such a mental or

Act.  42 U.S.C. § 423, et seq.  The issue before the Court is

whether the Administrative Law Judge ("ALJ") erred in finding

that there was "substantial evidence" that Plaintiff was not

disabled at any time since her alleged onset date of disability,

April 16, 2013.  For the reasons stated below, this Court will

reverse that decision and remand the matter for further

proceedings.

## I.    BACKGROUND AND PROCEDURAL HISTORY

On July 11, 2013, Plaintiff, Mayra L. Saez-Ortiz,

protectively filed an application for DIB,[2] alleging that she

became disabled on April 16, 2013.  Plaintiff claims that she

can no longer work as a machine operator and bagger because of

her severe impairments, which include history of concussion/head

injury (with post-concussion syndrome), cervical and lumbar

degenerative disc disease with radiculopathy, carpal tunnel

syndrome and headaches.

---

physical impairment that the claimant cannot perform substantial
gainful employment for at least twelve months.  42 U.S.C. § 423
et seq.

[2] A protective filing date marks the time when a disability
applicant made a written statement of his or her intent to file
for benefits.  That date may be earlier than the date of the
formal application and may provide additional benefits to the
claimant.  See SSA Handbook 1507; SSR 72-8.

Plaintiff's initial claim was denied on November 21, 2013, and upon reconsideration on February 14, 2014. Plaintiff requested a hearing before an ALJ, which was held on February 16, 2016. On August 31, 2016, the ALJ issued an unfavorable decision. Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on July 6, 2017, making the ALJ's August 31, 2016 decision final. Plaintiff brings this civil action for review of the Commissioner's decision.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). It means "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker,

717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d
700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the
Commissioner's reasoning is indeed essential to a meaningful
court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained the
> weight he has given to obviously probative
> exhibits, to say that his decision is
> supported by substantial evidence approaches
> an abdication of the court's duty to
> scrutinize the record as a whole to
> determine whether the conclusions reached
> are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Although
an ALJ, as the fact finder, must consider and evaluate the
medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here
is no requirement that the ALJ discuss in its opinion every
tidbit of evidence included in the record," Hur v. Barnhart, 94
F. App'x 130, 133 (3d Cir. 2004). In terms of judicial review,
a district court is not "empowered to weigh the evidence or
substitute its conclusions for those of the fact-finder."
Williams, 970 F.2d at 1182. However, apart from the substantial
evidence inquiry, a reviewing court is entitled to satisfy
itself that the Commissioner arrived at his decision by
application of the proper legal standards. Sykes, 228 F.3d at

262; <u>Friedberg v. Schweiker</u>, 721 F.2d 445, 447 (3d Cir. 1983);

<u>Curtin v. Harris</u>, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.    Standard for DIB**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.   <u>See</u> 42 U.S.C. § 1382c(a)(3)(A).   Under this definition, a Plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.   42 U.S.C. § 1382c(a)(3)(B) (emphasis added).

The Commissioner has promulgated regulations[3] for

_____

[3] The regulations were amended for various provisions effective

determining disability that require application of a five-step

sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step

process is summarized as follows:

1.    If the claimant currently is engaged in substantial
      gainful employment, he will be found "not disabled."

2.    If the claimant does not suffer from a "severe
      impairment," he will be found "not disabled."

3.    If the severe impairment meets or equals a listed
      impairment in 20 C.F.R. Part 404, Subpart P, Appendix
      1 and has lasted or is expected to last for a
      continuous period of at least twelve months, the
      claimant will be found "disabled."

4.    If the claimant can still perform work he has done in
      the past ("past relevant work") despite the severe
      impairment, he will be found "not disabled."

5.    Finally, the Commissioner will consider the claimant's
      ability to perform work ("residual functional
      capacity"), age, education, and past work experience
      to determine whether or not he is capable of
      performing other work which exists in the national
      economy.  If he is incapable, he will be found
      "disabled."  If he is capable, he will be found "not
      disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is

therefore dependent upon a finding that the claimant is

incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof.

_____

March 27, 2017.  See 82 F.R. 5844.  Because the ALJ issued her
decision prior to that effective date, the Court must employ the
standards in effect at the time of her decision.

See <u>Wallace v. Secretary of Health & Human Servs.</u>, 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence.  <u>See</u> <u>id.</u>  In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." <u>Kangas v. Bowen</u>, 823 F.2d 775, 777 (3d Cir. 1987); <u>see</u> <u>Olsen v. Schweiker</u>, 703 F.2d 751, 753 (3d Cir. 1983).

**C.  Analysis**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability.  At step two, the ALJ found that Plaintiff's impairments of history of concussion/head injury (with post-concussion syndrome), cervical and lumbar degenerative disc disease with radiculopathy, carpal tunnel syndrome and headaches were severe.  At step three, the ALJ determined that Plaintiff's severe impairments or her severe impairments in combination with her other impairments did not equal the severity of one of the listed impairments.  The ALJ then determined that Plaintiff's

residual functional capacity ("RFC") precluded her from
performing her past work as a machine operator and bagger, but
her RFC rendered her capable of performing work at the sedentary
level,[4] with some limitations in reaching, handling, and stress
level (steps four and five).

Plaintiff argues that the ALJ erred in two main ways.
Plaintiff contends that the ALJ erred in determining that she
was capable of performing sedentary level jobs because of a
faulty hypothetical question posed to the Vocational Expert
("VE").  Plaintiff argues that even though the ALJ found
Plaintiff, who was educated in Spanish and lived most of her
life in Puerto Rico, to be illiterate in English, the ALJ did
not convey that finding to the VE, who then suggested jobs that
require significant proficiency in speaking, writing, and
understanding English.  Plaintiff also argues that the ALJ erred
in her consideration of Plaintiff's treating physician's
opinions regarding how long Plaintiff can sit and how well
Plaintiff can utilize her fingers.

The Court finds that the ALJ did not err in her analysis of

_____

[4] See 20 C.F.R. § 404.1567 ("Physical exertion requirements. To
determine the physical exertion requirements of work in the
national economy, we classify jobs as sedentary, light, medium,
heavy, and very heavy.").

Plaintiff's treating physician's opinions when determining

Plaintiff's RFC. However, the Court agrees with Plaintiff that

the ALJ's determination that Plaintiff is capable of performing

significant jobs that exist in the national economy was based on

an incomplete hypothetical to the VE, and remand is warranted on

that basis.

### 1. The ALJ's assessment of Plaintiff's treating physician's opinions

The ALJ determined Plaintiff's RFC to be the following:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform sedentary work as defined in
> the DOT and in 20 CFR 404.1567(a) except as follows: she
> can occasionally reach/lift overhead with the left upper
> extremity. She can handle no more than frequently. She
> would be limited to low stress work (defined as routine
> work having no fast production rate pace). She would be
> off-task 5% of the workday (in addition to normal breaks)
> due to her subjective symptoms.

(R. at 61.) "The ability to perform the full range of sedentary

work requires the ability to lift no more than 10 pounds at a

time and occasionally to lift or carry articles like docket

files, ledgers, and small tools. Although a sedentary job is

defined as one that involves sitting, a certain amount of

walking and standing is often necessary in carrying out job

duties. Jobs are sedentary if walking and standing are required

occasionally and other sedentary criteria are met.

10

'Occasionally' means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday." SSR 96-9p; <u>see also</u> 20 C.F.R. § 404.1567 (defining "sedentary work").

Most unskilled sedentary jobs require good use of both hands and the fingers, and fine movements of small objects require use of the fingers to pick or pinch. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions. Any significant manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base.[5] SSR 96-9p.

Plaintiff argues that the ALJ erred in finding she is capable of sedentary work because it would require her to sit for two-hour intervals, and her treating physician, Dr. Gorti, opined in February 2014 that Plaintiff could not sit for prolonged periods. She also argues that the ALJ did not address

---

[5] SSR 96-9p also provides, "The ability to feel the size, shape, temperature, or texture of an object by the fingertips is a function required in very few jobs and impairment of this ability would not, by itself, significantly erode the unskilled sedentary occupational base."

the other medical evidence in the record that does not refute

Dr. Gorti's opinion.  With regard to her use of her fingers,

Plaintiff argues that the ALJ did not provide any good reason to

reject Dr. Gorti's opinion that she could only finger items

occasionally.

A treating physician's opinions are typically entitled to

"great weight," but an ALJ may reduce his reliance upon a

treating physician's opinions if those opinions are inconsistent

with other medical evidence, and if he explains his reasoning.

Plummer v. Apfel, 186 F.3d 422, 439 (3d Cir. 1999)("[A]n ALJ is

permitted to accept or reject all or part of any medical

source's opinion, as long as the ALJ supports his assessment

with substantial evidence."); Cotter v. Harris, 642 F.2d 700,

705 (3d Cir. 1981)("We are also cognizant that when the medical

testimony or conclusions are conflicting, the ALJ is not only

entitled but required to choose between them. . . . [W]e need

from the ALJ not only an expression of the evidence s/he

considered which supports the result, but also some indication

of the evidence which was rejected."); Chandler v. Commissioner

of Social Sec., 667 F.3d 356, 361 (3d Cir. 2011) (citing 20

C.F.R. §§ 404.1527(e)(1), 404.1546(c); 20 C.F.R. §

404.1527(d)(1)-(2); SSR 96-6p)(other quotations, citations, and

alterations omitted)("The ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations. Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, the law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity, and state agent opinions merit significant consideration as well.").

After setting forth a summary of the medical records and Plaintiff's reports of her daily living activities, which included preparing meals, shopping, handling finances, and handling personal care activities, the ALJ considered the various opinions of the treating and consultative medical sources. As to Dr. Gorti, the ALJ found:

> The undersigned assigns little weight to [Dr. Gorti's] opinion, finding that although the claimant is limited to lifting/carrying as suggested by Dr. Gorti, his remaining findings generally overestimate the claimant's functional limitations and are inconsistent with her improvement over time with physical therapy, appearance at physical examinations (including the minimal findings noted in Dr. Hoffman's examination) and functional abilities at the conclusion of physical therapy (Exhibits 3F, 6F).

(R. at 65.)

This analysis, when coupled with the ALJ's decision as whole in which she specifically articulated the weight she

afforded each medical source opinion based on the record evidence, readily satisfies her burden to explain why she accepted or rejected Plaintiff's treating physician's opinion.

This is especially true for two additional reasons. First, Dr. Gorti's opinions derive from a "check-the-box" form (R. at 531-32), and "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993); Zonak v. Commissioner of Social Sec., 290 F. App'x 493, 497 (3d Cir. 2008)(affirming the ALJ's rejection of the plaintiff's treating physician's opinion because it was provided on a check-box form and no reasons were given in support of the doctor's conclusion).

Second, Dr. Gorti's opinions went directly to the elements of Plaintiff's RFC, which is a finding expressly reserved to the Commissioner, and it is not for a treating medical source or consultative examiner to determine. 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c). The Court therefore finds that the ALJ did not err in her consideration of the medical evidence regarding Plaintiff's ability to sit and use her fingers.

**2. The ALJ's hypothetical to the VE at step five**

At step five of the sequential step analysis, the burden is

on the Commissioner to show that an individual's impairments do
not prevent her from performing other work that exists in the
national economy, considering her RFC together with the
vocational factors of age, education, and work experience.  20
C.F.R. § 404.1520(f).  In making that determination, an ALJ will
rely on the *Dictionary of Occupational Titles* (DOT), as well as
testimony from VEs, for information about the requirements of
work in the national economy.  SSR 00-4p.

Occupational evidence provided by a VE generally should be
consistent with the occupational information supplied by the
DOT, but when there is an apparent unresolved conflict between
VE evidence and the DOT, the ALJ must elicit a reasonable
explanation for the conflict before relying on the VE evidence
to support a determination about whether the claimant is
disabled.  Id.  The ALJ must then explain in her decision how
she resolved the conflict.  Id.

In this case, the ALJ determined that Plaintiff was not
capable of performing her past work as a machine operator and
bagger, which are medium exertion level jobs.  The ALJ noted
that a transferability of skills analysis was not necessary
because any skills Plaintiff obtained from her previous
employment were immaterial to the sedentary work level, which

the ALJ determined Plaintiff retained the RFC to perform.  With

regard to the other vocational factors of age and education, the

ALJ found that Plaintiff was a younger individual – 36 years old

on the date of disability – and the ALJ found that even though

Plaintiff received some post-high school education, it was in

Spanish, and Plaintiff utilized an interpreter at the hearing.

The ALJ therefore determined that because Plaintiff was not able

to communicate in English,[6] she was considered to be illiterate

in English.[7]

---

[6] When making that determination, the ALJ also noted that one
doctor's notes indicated that Plaintiff spoke English fluently.
(R. at 66.)  The Court will address this finding below.  See
infra note 12.

[7] 20 C.F.R. § 404.1564(b)(5) and (6) provides:

    (5) Inability to communicate in English. Since the ability
to speak, read and understand English is generally learned or
increased at school, we may consider this an educational factor.
Because English is the dominant language of the country, it may
be difficult for someone who doesn't speak and understand
English to do a job, regardless of the amount of education the
person may have in another language. Therefore, we consider a
person's ability to communicate in English when we evaluate what
work, if any, he or she can do it. It generally doesn't matter
what other language a person may be fluent in.

    (6) Information about your education. We will ask you how
long you attended school and whether you are able to speak,
understand, read and write in English will also consider other
information about how much formal or informal education you may
have had through previous work, community projects, hobbies, and
any other activities, which might help you to work.

The ALJ's assessment of Plaintiff's education – i.e.,
Plaintiff's illiteracy in English – and how the ALJ described
Plaintiff's education to the VE is the crux of this aspect of
Plaintiff's appeal.  At the hearing, the ALJ posed the following
hypothetical to the VE:

> Ms. Morocco, please assume an individual having the
> Claimant's age, education and past work that you described.
> Please assume that this individual is limited to sedentary
> work as defined under the [*Dictionary of Occupational
> Titles*]. This individual can perform no more than
> occasional overhead lifting and reaching with the left
> upper extremity. This individual is limited to no more than
> frequent handling. This individual would require a low
> stress job and I'll define that as a routine job consistent
> with unskilled work and having no fast production pace. Can
> this individual perform Claimant['s] past work?

(R. at 109.)  The VE answered "no," and stated that the
hypothetical individual described by the ALJ could perform the
sedentary level jobs of document preparer (DOT 249.587-018),
taper for electronic components (DOT 017.684-010), and envelope
addresser (DOT 209.587-010).  (R. at 110.)  As pointed out by
Plaintiff, the DOT[8] classifies these jobs with a language

---

[8] "The DOT is a vocational dictionary that lists and defines all
jobs available in the national economy and specifies what
qualifications are needed to perform each job."  Zirnsak v.
Colvin, 777 F.3d 607, 617 (3d Cir. 2014) (citing Appendix C,
Dictionary of Occupational Titles, available at
www.occupationalinfo. org/appendxc_1.html) (other citations
omitted).  The qualification categories listed by the DOT for
each job include the job's Strength level, General Educational
Development ("GED") level, and its Specific Vocational

development level of 2, which requires:

> Reading: Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes.

> Writing: Write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs.

> Speaking: Speak clearly and distinctly with appropriate pauses and emphasis, correct pronunciation, variations in word order, using present, perfect, and future tenses.

DOT, Appendix C.

Plaintiff argues that the ALJ did not present a proper hypothetical to the VE regarding the vocational factor of education so that the VE could either modify her testimony regarding the jobs Plaintiff was capable of performing, or explain the apparent conflict between the language level required by the suggested jobs and Plaintiff's educational level, which the ALJ deemed to be commensurate with illiteracy. Because the VE was left in the dark as to Plaintiff's apparent

---

Preparation ("SVP") level. Strength level "reflects the estimated overall strength requirement of the job." GED measures the "those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." GED is broken into three categories: (1) reasoning development, (2) mathematical development, and (3) language development. Reasoning levels in the DOT range from level 1 to level 6.

lack of English language skills, Plaintiff argues that the ALJ failed to fulfill her obligation under SSA regulations to elicit a reasonable explanation for the conflict from the VE, and then explain how she resolved the conflict in her decision.

The Court agrees. The only testimony at the hearing regarding Plaintiff's education is that she has a high school education and two years of college. (R. at 81.) The hearing transcript contains no testimony that Plaintiff's education was entirely in Spanish in Puerto Rico. The only indication as to Plaintiff's education relative to her literacy level in English is Plaintiff's use of an interpreter at the hearing. Thus, when the ALJ asked the VE to consider a hypothetical individual with Plaintiff's "education," the only information as to Plaintiff's education available to the VE on which to base her testimony was that Plaintiff completed two years of college and required the assistance of an interpreter at the hearing.

The ALJ's hypothetical presents one problem that compounds into a second problem. First, the ALJ's hypothetical does not fully apprise the VE of Plaintiff's education, which is a vocational factor that the ALJ must consider in tandem with Plaintiff's RFC. See 20 C.F.R. § 404.1520(f). Second, in her decision the ALJ determined that Plaintiff was illiterate in

English, and that Plaintiff was capable of performing the three jobs suggested by the VE. The ALJ failed, however, to reconcile Plaintiff's illiteracy with the language development levels of the jobs suggested by the VE, who based her testimony on the incomplete hypothetical. This is in contravention of the regulations and Third Circuit law. See SSR 00-4p; Zirnsak v. Colvin, 777 F.3d 607, 617 (3d Cir. 2014) (internal quotations and citations omitted) ("As a general rule, occupational evidence provided by a VE should be consistent with the occupational evidence presented in the DOT," and to ensure consistency "an ALJ is required to (1) ask, on the record, whether the VE's testimony is consistent with the DOT, (2) elicit a reasonable explanation where an inconsistency does appear, and (3) explain in its decision how the conflict was resolved.").

Defendant argues that the ALJ did not err in these two ways, but even if she did, those errors do not warrant remand, because: (1) the Medical-Vocational Guidelines, or "Grids,"[9]

---

[9] The Grids is a group of clear rules that dictate a finding of disabled or not disabled based on a claimant's vocational factors (age, education, and work experience) and individual RFC. See Medical-Vocational Guidelines of Appendix 2 of 20 C.F.R. pt. 404, subpt. P, app. 2.

instruct that the inability to communicate in English has the
least significance when a claimant is found to be able to work
at the sedentary, unskilled level;[10] (2) the VE considered
Plaintiff's illiteracy because she saw the interpreter at the
hearing; (3) Plaintiff's past work had the same language level
as the jobs suggested by the VE; and (4) counsel for Plaintiff
never questioned the VE at the hearing about the impact of
Plaintiff's English skills.  Defendant further argues that
Plaintiff's basis for reversal cannot be countenanced because
under Plaintiff's theory every non-English speaking claimant
would be deemed disabled simply because they could never meet
even the lowest language proficiency level in the DOT.[11]

---

[10] "While illiteracy or the inability to communicate in English
may significantly limit an individual's vocational scope, the
primary work functions in the bulk of unskilled work relate to
working with things (rather than with data or people) and in
these work functions at the unskilled level, literacy or ability
to communicate in English has the least significance.  Similarly
the lack of relevant work experience would have little
significance since the bulk of unskilled jobs require no
qualifying work experience.  Thus, the functional capability for
a full range of sedentary work represents sufficient numbers of
jobs to indicate substantial vocational scope for those
individuals age 18-44 even if they are illiterate or unable to
communicate in English."  Medical-Vocational Guidelines of
Appendix 2 of 20 C.F.R. pt. 404, subpt. P, app. 2, 201.00(i).

[11] The lowest level of language development in the DOT requires:

    Reading:  Recognize meaning of 2,500 (two- or three-
    syllable) words.  Read at rate of 95-120 words per minute.

The Court is not persuaded.  First, the Grids are not
applicable in this case because Plaintiff has both exertional
and nonexertional limitations, and an ALJ must take testimony
from a VE or consider other similar evidence, such as a learned
treatise, rather than solely rely upon the Grids at step five.
Sykes v. Apfel, 228 F.3d 259, 273 (3d Cir. 2000).  In
circumstances where the ALJ may refer only to the Grids, there
is no need for the ALJ to reconcile any conflicts between the VE
testimony and the DOT because the VE testimony is not necessary.
Thus, the Grids' instruction as to the impact illiteracy has on
a sedentary job would singularly support the ALJ's determination
at step five that a claimant is capable of performing that type
of job.  But where VE testimony is required, as is the case
here, and a conflict arises, the rule requiring the ALJ to
explain how the conflict impacts the step five analysis makes
sense because demonstrating that a claimant is capable of other

----

Compare similarities and differences between words and
between series of numbers.

Writing: Print simple sentences containing subject, verb,
and object, and series of numbers, names, and addresses.

Speaking: Speak simple sentences, using normal word order,
and present and past tenses.

DOT, Appendix C.

jobs in the national economy is the ALJ's burden to prove, and an unexplained conflict could undermine the ALJ's ultimate benefits determination.

Defendant's other arguments are unavailing as well. The presence of an interpreter at a hearing does not automatically suggest the level of a claimant's English literacy and her overall education level. Here, it is unknown to everyone what the VE considered to be Plaintiff's "education," other than the VE of course, whose thoughts on the issue were not elicited by the ALJ or otherwise volunteered by the VE. Relatedly, contrary to Defendant's argument that Plaintiff's counsel should have raised the issue at the hearing, it is not Plaintiff's burden to establish other work in the economy she is capable of performing. Moreover, the determination that Plaintiff was illiterate was made in the ALJ's decision, which came well after the hearing.

Also unknown to everyone is how Plaintiff performed her prior work such that, as Defendant argues, it could be extrapolated that her capability to perform a language level 2 job in the past rendered her equally capable of performing the three jobs suggested by the VE. Thus, the fact that Plaintiff worked in language level 2 jobs previously does not – without

more information as to how Plaintiff performed those jobs –
support Defendant's position, especially when the ALJ does not
articulate that same reasoning in her decision. See, e.g.,
Williams v. Astrue, 317 F. App'x 212, 214 (3d Cir. 2009) (noting
that a claimant's past work was classified as medium level jobs,
but the claimant performed those prior jobs at the light level);
Karge v. Commissioner of Social Security, 2018 WL 6077981, at *2
(D.N.J. 2018)(noting that the claimant performed past work at
the sedentary level rather than at the light level as that past
work is classified by the DOT); De Diaz v. Berryhill, 2018 WL
6603865, at *3 (C.D. Cal. 2018)(rejecting the Commissioner's
argument that because the plaintiff worked over ten years as a
machine operator, which is a Language Level One job, he could
perform a job with similar duties to those identified by the VE,
finding that the plaintiff never testified about the specifics
of her job as a machine operator, so the court was unable to
determine if her duties as she performed them were consistent
with the DOT definition, and noting that courts have routinely
rejected similar arguments (citing Obeso v. Colvin, No. 15-151,
2015 WL 10692651, at *16 (E.D. Cal. Apr. 20, 2015)(noting that
the Ninth Circuit has "resoundingly rejected" the argument that
a claimant's prior work would excuse an ALJ from explaining how

the claimant's language limitations would impact her ability to perform jobs identified by the VE)).

Finally, a finding that the ALJ erred by not fulfilling her obligations to inquire about and explain the conflict between the VE's testimony and the ALJ's determination that Plaintiff was illiterate in English does not result in a broader rule that effectively deems every non-English speaker or illiterate person to be disabled. As succinctly stated by the Ninth Circuit, "A claimant is not per se disabled if he or she is illiterate. We merely hold that in order for an ALJ to rely on a job description in the Dictionary of Occupational Titles that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation." Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001). This Court makes the same observation here, which is in accord with the SSA regulations and the law within the Third Circuit. See SSR 00-4p; Zirnsak, 777 F.3d at 617.

The Third Circuit has suggested that an ALJ's failure to address a conflict presented by a VE's testimony does not automatically warrant remand where "substantial evidence exists in other portions of the record that can form an appropriate basis to support the result." Rutherford v. Barnhart, 399 F.3d

546, 557 (3d Cir. 2005).  For example, in <u>Zirnsak</u>, the Third

Circuit noted that neither the ALJ nor the VE explained how a

sit/stand option would transform a subassembler job from a job

requiring "light" exertion level to a "sedentary" job, and found

that the ALJ did not elicit a reasonable explanation for this

inconsistency.  <u>Zirnsak</u>, 777 F.3d at 619-20.  The Third Circuit

found that the ALJ's failure to comply with the requirements of

SSR 00-4p in that instance was not fatal, however, because

substantial evidence supported the claimant's ability to perform

three other jobs widely available in the national economy.  <u>Id.</u>

at 620.

In contrast to <u>Zirnsak</u>, the Court cannot determine here

whether substantial evidence supports the ALJ's conclusion that

Plaintiff is capable of performing work that exists in the

national economy because a significant vocational factor –

Plaintiff's illiteracy in English – was not addressed for any of

the jobs the ALJ determined Plaintiff was capable of performing.

The Court does not suggest that no jobs exist that Plaintiff is

able to perform simply because of her illiteracy in English.

In order to determine whether the ALJ has supported her burden

at step five, however, the ALJ must elicit from the VE how a

claimant's illiteracy in English would affect the jobs available

to her, when also considering her RFC, age and prior work experience. The ALJ must then explain how the VE's testimony impacts her ultimate conclusion at step five.[12] In the context of an ALJ's non-compliance with SSR 00-4p as it pertains to a claimant's illiteracy, rather than for other exertional and nonexertional limitations, many other courts have ordered remand for the same reasons. See 2 Soc. Sec. Disab. Claims Prac. & Proc. § 22:156 (2nd ed.)(citing Santiago v. Astrue, 181 Soc. Sec. Rep. Serv. 233, 2012 WL 3194402 (E.D. Pa. 2012)(The ALJ found the claimant was unable to communicate in English, including reading, writing or speaking and, thus, was considered illiterate for purposes of disability evaluation. The ALJ's hypothetical to the VE did not include the claimant's language problem; therefore, it could not be determined whether the VE's

---

[12] Also in this context, the ALJ should explain the apparent conflict between records that reflect Plaintiff is fluent in English with the determination that Plaintiff is illiterate in English. The Court finds this apparent conflict perplexing although several possibilities come to mind. Obviously, the doctor's notes could be wrong. It may also be the case that Plaintiff has some English language skills and the interpreter was summoned in an exercise of caution or to assist in understanding more technical issues and testimony. And it would follow that if the doctor's notes are correct, Plaintiff has overstated her lack of English language skills. Wherever Plaintiff may fall on this spectrum, it is clear the ALJ made a finding Plaintiff was illiterate. As explained infra below, that finding required a certain inquiry of the VE which did not occur.

response to the posed question reflected claimant's inability to communicate in English.  Although the VE testified he took into consideration the claimant's language problem, the VE concluded without explanation that claimant could work as an usher or ticket taker, according to the DOT, but the DOT provided that those positions required English language skills, thereby strongly suggesting that the VE's answer did not adequately take into account claimant's significant language limitation.); Smith v. Colvin, 211 Soc. Sec. Rep. Serv. 125, 2015 WL 65544 (E.D. Cal. 2015)(Claimant was illiterate and unable to speak English. The ALJ did not include these language issues in a hypothetical and all jobs offered by the VE required level 1 reasoning according to the DOT, which included speaking in simple sentences using normal word order, in present and past tenses; writing simple sentences containing subject, verb and object; and reading a series of numbers, names and addresses, and two to three syllable words at a rate of 95–120 words per minute. Because the ALJ had found claimant was not able to communicate in English and was considered illiterate in English, substantial evidence did not support the ALJ's conclusion that claimant could perform a significant number of alternate occupations existing in the national economy)); 2 Soc. Sec. Disab. Claims

Prac. & Proc. § 22:195 (2nd ed.)(citing <u>Rodriguez v. Massanari</u>,
78 Soc. Sec. Rep. Serv. 92, 2002 WL 171975 (N.D. Ill. 2002)
(Even assuming claimant's past relevant work was the job title
the ALJ chose (fish grader), the job as described in the DOT
required literacy and the ability to communicate in English and
the ALJ's findings regarding claimant's literacy and ability to
communicate in English were not supported by the record); <u>Lugo
v. Chater</u>, 932 F. Supp. 497, 51 Soc. Sec. Rep. Serv. 468
(S.D.N.Y. 1996), adhered to on reconsideration, (Apr. 19, 1996)
(ALJ erroneously concluded claimant had limited ability to
communicate in English and to read and write English, where
claimant testified exclusively in Spanish with aid of an
interpreter during both of his hearings; claimant's formal
education was acquired entirely in Spanish in Puerto Rico; he
communicated almost exclusively in Spanish on his past jobs and
when he had to deal with English speaking customers he sought
assistance from other employees; the claimant's testimony that
he could not read or write in English was uncontradicted in the
record; and the ALJ provided no explanation for his conclusion
that the claimant could communicate in English); <u>Clark v.
Astrue</u>, 165 Soc. Sec. Rep. Serv. 224, 2011 WL 1544204 (C.D. Cal.
2011) (The ALJ made no finding as to claimant's literacy and did

not even discuss his ability to read or write. The VE's testimony that someone who was illiterate could perform the identified jobs was inconsistent with the DOT, and the VE failed to provide a reasonable explanation for the variance. Because there were no findings on the claimant's level of literacy, the VE's failure to explain the variance between her testimony and the DOT could not be found harmless); Oeur v. Astrue, 174 Soc. Sec. Rep. Serv. 196, 2012 WL 234642 (C.D. Cal. 2012)(The ALJ found as part of claimant's RFC that he could not read or write in English and required instructions translated into the Cambodian language. However, the descriptions in the DOT for the jobs the VE testified claimant could perform all required him to read and write, and speak English language level 1 and 2. The VE failed to acknowledge any conflict with the DOT and provided no explanation for the variance between the DOT and the jobs claimant could allegedly do. The ALJ did not resolve this conflict and, in fact, asserted without explanation that the VE's testimony was consistent with the DOT. The ALJ's errors were not harmless as there was no analysis of the jobs identified by the VE and the extent to which the job base would be eroded by the claimant's lack of language skills, lack of education and requirement for work instructions to be given in

Cambodian); <u>Centeno v. Astrue</u>, 175 Soc. Sec. Rep. Serv. 610, 2012 WL 728073 (W.D. Tex. 2012)(Claimant, who testified through a translator and testified that she could not read, write or speak English, was found by the ALJ to be able to communicate "some" in English, without explaining what that meant. The ALJ asked the VE to consider someone with the claimant's education, without defining claimant's educational level or English language proficiency. In response, also without articulating what educational or language level he was considering, the VE testified that such a person could perform the requirements of occupations described in the DOT. However, the referenced jobs required the ability to write and speak simple sentences, and read a specified amount of English. Without any discussion the ALJ determined that the VE's testimony was consistent with information in the DOT. The ALJ's failure to include in the hypothetical that claimant was only able to communicate "some" English or articulate what he meant by "some" was not harmless error. The Commissioner failed to carry his burden of establishing claimant's English language skills were sufficient to perform the jobs identified by the VE)).

## III. CONCLUSION

When an ALJ has failed to apply the correct legal standards

31

and her conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits.  Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  <u>Melkonyan v. Sullivan</u>, 501 U.S. 89, 99 (1991).

Because the issue of how Plaintiff's illiteracy in English impacts Plaintiff's ability to perform jobs in the national economy is for the ALJ to determine based on testimony from a VE – a determination on which this Court expresses no opinion - the proper course in this action is to remand the matter for further consideration.  Consequently, the ALJ's otherwise thoughtful and comprehensive determination that Plaintiff is not totally disabled as of April 16, 2013 will be reversed and remanded for further consideration consistent with this Opinion.

An accompanying Order will be issued.


Date: <u>January 25, 2019</u>            <u>  s/ Noel L. Hillman  </u>
At Camden, New Jersey        NOEL L. HILLMAN, U.S.D.J.